*In re* PECK ESTATES.

CLAIM OF BERKSON.

1. POWERS—ESTATE IN FEE—DISPOSAL OF CORPUS OF TRUST BY WILL.
   Where the power to dispose of the corpus of an estate is limited to disposing of it by will effective at the death of the holder of the power, he does not have an absolute power of disposition which the statute declares an estate in fee, since the grantee of the power can not dispose of the entire fee for his own benefit (3 Comp. Laws 1929, §§ 13003, 13007).

2. BANKRUPTCY—ASSETS—POWERS.
   Where bankrupt's power to dispose of the corpus of a trust estate was limited to disposing of the corpus by will effective at his death, such power was not an asset of the bankrupt's estate as the trustee of a bankrupt's estate is vested, by operation of law, with the title of the bankrupt as of the date of adjudication as a bankrupt (11 USCA, § 110; 3 Comp. Laws 1929, §§ 13003, 13007).

Distinction between ownership and a power to appoint, see 3 Restatement, Property, § 318, comment b.

3. SAME—ASSETS—POWERS.

> The power of a beneficiary under a spendthrift trust to dispose of the corpus of the trust estate by will effective at his death is not a chose in action nor assignable, hence, could not constitute an asset of the beneficiary, assignable to the trustee, upon adjudication as a bankrupt (11 USCA, § 110; 3 Comp. Laws 1929, §§ 13003, 13007).

4. SAME—POWERS—LISTING OF ASSETS.

> Listing of interest of beneficiary of spendthrift trust as "a spendthrift beneficiary according to the instrument creating the same but which may not be anticipated and * * * immune from creditors and not subject to assignment" did not constitute an assignment or conveyance of such power to the trustee but was rather notice that the bankrupt could not make such an assignment (11 USCA, § 110; 3 Comp. Laws 1929, §§ 13003, 13007).

5. POWERS—STATUTES—BENEFICIAL POWER.

> Grantee of power, the beneficiary under a spendthrift trust, who was limited in the disposal of the corpus of the trust to disposal by will effective at his death did not have a "beneficial" power as used in statute defining a general or special power as "beneficial when no person other than the grantee has, by the terms of its creation any interest in its execution" where there were contingent remaindermen who took in default of appointment by holder of life interest in the trust and upon their survival of him (3 Comp. Laws 1929, § 13001).

6. TRUSTS—BENEFICIARY AS ONE OF SEVERAL TRUSTEES.

> A beneficiary, even the sole beneficiary, of a trust may be one of several cotrustees without rendering the trust executed.

Appeal from Kent; Spier (James E.), J., presiding. Submitted January 7, 1948. (Docket No. 17, Calendar No. 43,836.) Decided April 5, 1948.

In the matter of the estates of Catharine A. Peck, deceased, and Percy S. Peck, deceased. Joseph Berkson filed claims in each estate. Claims denied. Plaintiff appealed to circuit court. Order affirmed. Plaintiff appeals. Affirmed.

*Shapero & Shapero* (*Willis B. Perkins, Jr.,* of counsel), for plaintiff.

*Harrington, Waer & Cary,* for Percy S. Peck's daughters and executors of his estate.

*Butterfield, Amberg, Law & Buchen,* for Michigan Trust Company, trustee under will of Catharine A. Peck.

SHARPE, J. This case involves two appeals from a judgment of the circuit court affirming orders of the probate court of Kent county, one in the estate of Catharine A. Peck and one in the estate of Percy S. Peck. The appealing party is Joseph Berkson, whose claims were denied in the probate court of Kent county and on appeal to the circuit court of Kent county were again denied.

The facts in these cases, consolidated on appeal, are as follows: Catharine A. Peck died February 21, 1927, leaving a will containing many bequests. The will designated the Michigan Trust Company of Grand Rapids and her nephew, Percy S. Peck, as coexecutors. The residuary estate was divided into two parts and the twelfth paragraph of the will provided that one half of the residuary estate was devised and bequeathed:

"To The Michigan Trust Company and Percy S. Peck, in trust, to hold, invest and reinvest the same, with all the powers specified in paragraph second; and to pay the net income thereof to my said nephew, Percy S. Peck, at least as often as quarter-annually in each year, for and during the term of his natural life; and at his death the principal of said fund shall go and be disposed of as he, my said nephew, may, by his last will and testament, appoint; and, in default of such appointment, I give,

devise and bequeath the same to his issue;—TO HAVE AND TO HOLD the same to them respectively, and to their respective heirs, representatives and assigns— forever; and in case no issue of my said nephew Percy shall be living at his death, then tò my niece."

The Michigan Trust Company and Percy S. Peck qualified as trustees under the will. In February, 1934, the three children of Percy S. Peck filed suit against him and the Michigan Trust Company, charging diversion of the trust funds. The rights and duties of the two trustees under the will in question were discussed and passed upon by the Michigan Supreme Court in the case of *Roberts* v. *Michigan Trust Co.*, 273 Mich. 91.

On June 7, 1935, Percy S. Peck filed a voluntary petition in bankruptcy, in which he listed his interest in the trust in question, and other trusts, as follows:

"Debtor has interests in certain trust assets as a spendthrift beneficiary according to the instrument creating the same but which may not be anticipated and are immune from creditors and not subject to assignment. Value none."

On January 15, 1937, the trustee in bankruptcy sold at auction for $2,005 to the claimant, Joseph Berkson, who was not a creditor but an outside purchaser the following assets of the bankrupt estate of Percy S. Peck:

"All of my right, title and interest as trustee of the estate of said bankrupt, and the right, title and interest of the bankrupt, if any, in a certain trust created by the will of Catharine A. Peck, deceased, which will was duly admitted to probate in the probate court for the county of Kent, under file No. 43101, and all of my right, title and interest as trustee and the right, title and interest of said bankrupt,

if any, in and to a certain trust created by a trust agreement dated June 4, 1913, between Catharine A. Peck and Thomas M. Peck, running to the Michigan Trust Company as trustee; without warranty of title, however."

On December 15, 1942, Percy S. Peck renounced under oath the power of appointment given under the will of Catharine A. Peck, which instrument was filed with the probate court and reads as follows:

"I, Percy Seaman Peck, do hereby file with the probate court of Grand Rapids, Kent county, Michigan, this statement by me made, renouncing and foreswearing all, any and every, power of appointment given me by the provision of the will of my deceased aunt, Catharine A. Peck, as it is my understanding and belief, that she, the aforesaid Catharine A. Peck, wished and willed, that all such properties and securities, of any nature whatsoever, held in trust by the Michigan Trust Company, in a trust fund, now known as trust fund, No. 4,184 pass, at my death, directly and equally to my three daughters, namely Catherine Peck Roberts, Virginia Peck Apted and Florence Peck Watson, all living in Grand Rapids, Michigan or Kent county, Michigan. This paper to be held in file for me until my death or until such radical changes in the Federal or State laws, or deaths in my family would deem it advisable that I should withdraw it."

On September 13, 1944, Percy S. Peck died, leaving a will dated December 21, 1942, which expressly confirmed his renunciation of the power of appointment conferred on him by the provisions of the will of his aunt Catharine A. Peck, and containing the further language:

"On December 13, 1942.  *  *  *  I legally relinquished, renounced and nullified any such powers as were given me in the above mentioned will of the said Catharine A. Peck."

On January 17, 1945, claimant Berkson filed a claim, by means of petition for assignment of residue, in the estate of Catharine A. Peck claiming the corpus of the one half residue of the estate held for the benefit of Percy S. Peck, which at the time of filing final account on December 5, 1944, was inventoried at $393,470.99. Berkson also filed claim in the Percy S. Peck estate to the uncollected income inventoried by the executors of his estate as having come from the estate of Catharine A. Peck, deceased, under paragraph 12 of her will, although never actually paid and still remaining a part of the corpus of the Catharine A. Peck estate, in the sum of $3,908.49.

It is to be noted that the custody and control of the funds of the trust in question remained entirely in the Michigan Trust Company, as cotrustee, and only a nominal bond of $10,000 was required of Percy S. Peck.

The cause came on for trial and at its conclusion the trial court denied recovery on the two claims filed by Joseph Berkson. In an opinion filed, the court said:

"Looking first to the basic instrument involved, the will of the deceased, we find the clearly expressed intention of a testator to establish a trust from which her nephew Percy Peck would receive the income only for life, and the corpus of the trust would go to his heirs, if any, after his death. With an apparent understanding of her nephew, the testator had forebodings of that which later actually happened, *i.e.,* the insolvency of her nephew, and took the logical steps to preserve the estate.  *  *  *

"In the opinion of this court Percy Peck did not have a life estate. It was not so intended nor does the operation of the law create one merely by reason of the grant of a power to devise or because of the cotrusteeship as set up by the will. Percy S. Peck

was merely given the income from the trust. His legal status is termed a 'beneficiary of a spendthrift trust.'

"Nor, in the opinion of this court, was the 'power to devise by will,' a power under the bankruptcy law 'which he might have exercised for his own benefit,' but rather it was a power 'he might have exercised solely for some other person,' and as such did not vest by operation of law in the trustee in bankruptcy. Neither the exercise nor nonexercise of the power to designate in his will, would benefit Percy Peck or his estate in any way.

"Nor was this power a 'right of action—which he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered' under the laws of this State, regardless of contrary holdings of the English cases and from some other jurisdictions."

Claimant, Joseph Berkson, appeals and urges that Percy S. Peck's voluntary bankruptcy was an exercise of his power to appoint and constituted an appointment of Fred G. Timmer, his trustee in bankruptcy, of a fee in the property covered by his power; and that insofar as creditors and purchasers are concerned Percy S. Peck was the possessor of a fee absolute at the time of his bankruptcy. Claimant also urges that regardless of section 70 of the bankruptcy act, Percy S. Peck's conveyance in bankruptcy to his trustee of everything he possessed, not otherwise exempted, was the exercise of his power of appointment under the will of Catharine A. Peck and the corpus of the fund set aside for his benefit thereby passed to his trustee in bankruptcy and successively came to the hand of claimant by sale from the trustee.

In coming to our conclusions on the legal questions involved we have in mind that the trust in the

instant case is a spendthrift trust, see *Roberts* v. *Michigan Trust Co.,* 273 Mich. 91, 108, 109; and that paragraph 14 of the will provides:

"No person beneficially interested in any legacy of devise given by this will to my said trustee or trustees shall have power to assign, convey, pledge, hypothecate or anticipate the payment of any sum or delivery of any property which may at any time be or become due or payable by way of income or principal, under the terms of this will; and if any such assignment, conveyance, pledge, hypothecation or other instrument by way of anticipation is executed, the same shall be void and of no effect and shall not be recognized by my trustee or trustees, and it or they shall have power to withhold further payment to such person so beneficially interested in such legacy or devise, until such assignment, conveyance, pledge, hypothecation or other instrument shall be withdrawn or cancelled, in such manner as shall be satisfactory to my said trustee or trustees."

In support of the claim that Percy S. Peck at the time of his bankruptcy was the possessor of a fee absolute, claimant relies upon 3 Comp. Laws 1929, § 13003 (Stat. Ann. § 26.99), which reads as follows:

"When an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate, for life or years, such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers, but subject to any future estates limited thereon, in case the power should not be executed, or the lands should not be sold for the satisfaction of debts."

Section 13007, 3 Comp. Laws 1929 (Stat. Ann. § 26.103), reads as follows:

"Every power of disposition shall be deemed absolute, by means of which the grantee is enabled, in

his lifetime, to dispose of the entire fee for his own benefit.''

In the case at bar, the power of disposition was accompanied by a trust in favor of Percy S. Peck, the provisions of which gave him the power to dispose of the corpus of the estate by will. His power was limited to disposing of the corpus by will effective at his death.

Section 70 (a) of the bankruptcy act, as amended by 44 Stat. at L. 667 (11 USCA, § 110), provides that the trustee of a bankrupt's estate shall be vested by operation of law with the title of the bankrupt as of the date of adjudication as a bankrupt. Such power as Percy S. Peck had to dispose of the corpus of the trust estate by will was not an asset of the bankrupt's estate.

In *Jones* v. *Clifton,* 101 U. S. 225 (25 L. Ed. 908), it was said:

''The title to the land and policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will. The grantor could, indeed, exercise the power either by deed or will, but he could not vest the power in any other person to be thus exercised. Nor is the power a chose in action. It did not, therefore, in our judgment, constitute assets of the bankrupt which passed to his assignee.''

It should be noted that Percy S. Peck did not attempt to sell, assign or convey any of the trust property. In his petition in bankruptcy he listed his interest in the trust in manner following:

''Debtor has interests in certain trust assets as a spendthrift beneficiary according to the instrument creating the same but which may not be anticipated and are immune from creditors and not subject to assignment.''

Such a listing was not an assignment of his assets. As a matter of fact it is notice that the bankrupt could not make such an assignment. It was not a conveyance in bankruptcy to the trustee.

We are not in accord with claimant's contention that Percy S. Peck had a beneficial power as defined in 3 Comp. Laws 1929, § 13001 (Stat. Ann. § 26.97), which provides: "A general or special power is beneficial when no person other than the grantee has, by the terms of its creation any interest in its execution." In *Roberts* v. *Michigan Trust Co., supra,* we held that the children of Percy S. Peck had sufficient interest in the corpus of the trust to allow them to bring suit.

Claimant also urges that because Percy S. Peck was one of the trustees of his own trust the trust was executed; and that the presence of the Michigan Trust Company as a cotrustee does not prevent execution of the entire life estate of Percy S. Peck. It is well settled law that a beneficiary may be one of several cotrustees. In 54 Am. Jur. p. 102, the rule is stated to be, "The sole beneficiary of a trust may be one of several cotrustees."

See, also, *Cummings* v. *Corey,* 58 Mich. 494.

In view of the fact that Percy S. Peck never had a fee absolute in the corpus of the property or such a beneficial interest or power as defined in 3 Comp. Laws 1929, § 13001, it follows that claimant has no interest in the corpus of the trust fund.

The judgment of the circuit court is affirmed, with costs to the estates of Catharine A. Peck and Percy S. Peck.

BUSHNELL, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.