WHITTIER ESTATES, INC., Respondent, *v.* MANHATTAN SAVINGS BANK, Appellant.

Supreme Court, Appellate Term, First Department, April 5, 1944.

*C. De Witt Rogers* for appellant.

*Adolph Bangser* for respondent.

SHIENTAG, J. The action is to recover the deposit made by plaintiff as purchaser under a contract of sale of premises No. 423 East 14th Street, Manhattan, New York City, and for the expense of examination of title. Plaintiff refused to accept a deed tendered on the ground that title was rendered unmar-

ketable by encroachment of the front wall upon the street. The facts are not in dispute.

The contract required the purchaser to accept title subject to a state of facts shown on a certain survey made by surveyor Lovell in 1922 '' and to any changes since the date thereof * * * provided such changes do not render title unmarketable.''

The building was erected prior to 1899 as a five-story brick-front tenement and stood unchanged until 1941. The survey of 1922 showed that the front wall of the building at the street level projected over the sidewalk from one inch at the easterly end to an inch and a half at the westerly end. It also showed that at the height of seven feet above the sidewalk the wall projected an inch and three quarters over the street. Concededly if that wall had not been disturbed the defendant would have had a marketable title. The question is whether any change or alteration made in the wall since 1922 rendered the title unmarketable.

In 1941, the defendant made certain alterations to the building pursuant to a city building permit and a certificate of occupancy was subsequently issued. The stoops, cornice and other like projections which encroached upon the street were eliminated by the alteration. The only change in the front wall was that, from the foundation to the second story, the old brick wall was demolished and a stone wall substituted. The foundation was undisturbed, as was the wall above the second-story level.

At the trial two recent surveys were introduced in evidence, one by Lovell who had made the original survey referred to in the contract and another by Hollerith. Lovell's survey showed that after the alteration had been made the reconstructed stone wall encroached upon the street to a lesser extent than the part of the old brick wall it had replaced, namely, the encroachment upon the street was now one quarter of an inch on the east and one inch on the west. From the second story up, the front wall, which had remained unchanged, still encroached upon the street two inches on the east and two and three-quarters inches on the west. Hollerith's survey offered by the plaintiff shows that the altered wall projects over the sidewalk to a distance of from one inch on the easterly end to two inches on the westerly end, and that above the second story the encroachment ranges from three inches to three and a half inches. The two surveys differed, it was stipulated, because of a different basis used for the street

line. Concededly, however, the altered wall "projects on the sidewalk but to a lesser extent than did the original wall as shown by the 1922 survey."

Section 38-a of the General City Law (in effect April 29, 1941) provides: 1. "If the front or other exterior wall of any building erected on or before the first day of January nineteen hundred twenty, in any city encroaches not more than six inches upon any street or highway, no action or proceeding to compel the removal of such wall shall be instituted or maintained by or on behalf of the city, or by or on behalf of any person claiming an easement in or title to the portion of the street or highway on which such wall encroaches, unless such action or proceeding shall be commenced within the period of one year from the time this act takes effect * * *." 3. "If no action be brought within the period hereby limited therefor the owners and encumbrancers of such property shall be deemed to have an easement for the maintenance of the encroaching wall so long as the said wall shall stand, and no longer." No such action was instituted.

Clearly the City is prevented from removing the foundation and the front wall of the four upper stories. The point of difference between the parties is whether the stone portion of the wall used to replace the old brick wall, from the basement up to the level of the second story, comes within the protection of the statute. In other words, did the alteration of the exterior wall in 1941 destroy the immunity conferred by section 38-a of the General City Law? The court below thought that it did not but that there was sufficient doubt about it to render the title unmarketable.

We hold that under the circumstances of this case, where concededly the encroachment on the sidewalk was less after the alteration than it had been before, there is no reasonable doubt whatever that the title is a good and marketable one. A purchaser is entitled to a good marketable title — a title free from all reasonable doubt. (*Monogram Dev. Co.* v. *Natben Const. Co.*, 253 N. Y. 320, 323.) But that does not mean free from all possible doubt: if that were so, few titles could be held marketable. As Chief Judge CARDOZO put it: "The law assures to a buyer a title free from reasonable doubt, but not from every doubt" (*Norwegian E. F. Church* v. *Milhauser*, 252 N. Y. 186, 190). There must be some fairly debatable ground on which the doubt can be justified: something more than a mere speculation or a bare possibility. (*Cambrelleng et al.* v. *Purton et al.*, 125 N. Y. 610, 616; *Baylis* v. *Stimson*, 110 N. Y.

621, 624.) The test is not the hazard of possible litigation for, as has been pointed out, " It seems to be the inalienable right of any person to start a law suit " (*Reformed P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268, 279; *Ebling* v. *Dreyer,* 149 N. Y. 460.) The test is rather the chance of successful attack. We are of the opinion that there is no such chance in this case. The fact that the City is not a party to the action is not determinative. That simply means that in determining the marketability of the title the court, where all the parties in interest are not before it, is precluded from passing on any doubtful question of fact or of law. But where the question is free from doubt, the absence of the City, or of any other party in interest, does not preclude the court from passing on the marketability of a title. (*Imlach* v. *Seigel,* 199 App. Div. 343, 347.) Immunity against attack is not afforded by the approval of the alteration plans and the granting of a certificate of occupancy. (*Heymann* v. *Steich,* 114 N. Y. S. 603, affd. on opinion below 134 App. Div. 176, affd. 201 N. Y. 578.) Nor is immunity against attack afforded by any past policy on the part of the City. (*Levy Corporation* v. *Dick,* 116 Misc. 145, cited with approval in *McCarter* v. *Crawford,* 245 N. Y. 43, 47.) We hold the title marketable because we believe that there is no room for any reasonable doubt concerning the construction and application of section 38-a of the General City Law to the undisputed facts in this case. (*Brookman et al.* v. *Kurzman,* 94 N. Y. 272.)

The judgment below is reversed, with costs, and judgment is directed in favor of the defendant, with costs.

Concur: McLaughlin and Hecht, JJ.